753 F.2d 790
 1985-1 Trade Cases 66,415
 LORRIE'S TRAVEL & TOURS, INC., Plaintiff-Appellant,
v.
SFO AIRPORTER, INC., A California corp., and successor in
interest to Airportransit of California, etc. et
al., Defendants-Appellees.
and
The City and County of San Francisco and San Francisco
Airports Commission, Defendants.
 CA No. 83-2524.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 12, 1984.
Decided Feb. 15, 1985.
 
 John H. Boone, Geffrey P. Knudsen, Boone, Knudsen & Martin, P.C., San Francisco, Cal., for plaintiff-appellant.
 Guido Saveri, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before MERRILL, CANBY and NORRIS, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 Lorrie's Travel & Tours, Inc. (Lorrie's) sued the SFO Airporter, Inc. and Leaseco (Airporter), the City and County of San Francisco (City), and the San Francisco Airports Commission, alleging that a ten year exclusive contract awarded to the Airporter violated federal and state antitrust laws and state tort law. The district court held that the state antitrust immunity doctrine exempted the Airporter, the City, and the San Francisco Airports Commission from antitrust liability and dismissed Lorrie's federal claims pursuant to Fed.R.Civ.P. 12(b)(6). The pendent state claims were dismissed with the federal ones. The issue on appeal is whether the state action immunity doctrine exempts the Airporter from federal antitrust liability. Lorrie's has abandoned its appeal against the City and the San Francisco Airports Commission. We affirm.
 
 BACKGROUND
 
 2
 The California Public Utilities Commission has licensed both Lorrie's and Airporter to operate per capita and charter party ground transportation service between San Francisco and San Francisco International Airport. The City, however, has refused to grant Lorrie's a permit to operate ground transportation from the Airport to San Francisco. In August of 1972, the City entered into an Airline Motor Coach Service Agreement with the predecessor of Airporter. That agreement gave Airporter the exclusive right to provide per capita, for-hire ground transportation from the Airport to San Francisco for ten years. Lorrie's contends that Airporter's exclusive contract violates section one and two of the Sherman Act, (codified at 15 U.S.C. Secs. 1 and 2 (1982)), violates the California Cartwright Act, (codified at Calif.Bus. & Pro.Code Secs. 16700 to 16761 (West 1964)) and constitutes an intentional interference with business advantage.
 
 DISCUSSION
 
 3
 The state action immunity doctrine first articulated in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943)[1] exempts a municipality from federal antitrust liability for its anticompetitive acts when the municipality acts pursuant to a state policy to displace competition with regulation. City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 413, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978). The policy must be clearly articulated and affirmatively expressed. Community Communications Co., Inc. v. City of Boulder, 455 U.S. 40, 51, 102 S.Ct. 835, 840, 70 L.Ed.2d 810 (1982). To establish that the state's policy is clearly articulated and affirmatively expressed, the Airporter must show that there is a state policy to displace competition and that the legislature contemplated the kind of municipal actions alleged to be anticompetitive. Golden State Transit Corp. v. City of Los Angeles, 726 F.2d 1430, 1433 (9th Cir.1984).
 
 1. State Policy to Displace Competition
 
 4
 Lorrie's contends that the state action immunity doctrine does not apply in this case because Airporter's exclusive contract does not reflect state policy. Because the state has vested the City with discretion to suppress competition, Lorrie's argues that the City's decision to award an exclusive contract is the expression of a municipal preference rather than the implementation of state policy.
 
 
 5
 We recently rejected Lorrie's argument that the state must compel the municipality's anticompetitive acts to shield the municipality from antitrust liability. "Though neutrality is not enough, something less than strict complusion is necessary to extend immunity to local government."[2] Tom Hudson & Associates v. City of Chula Vista, 746 F.2d 1370, 1372-73 (9th Cir.1984). In three related cases, we held that state statutes that authorized but did not compel municipalities to regulate specific business ventures consistent with state guidelines satisfied the LaFayette requirement that the city show an affirmative state policy to displace competition. See Catalina Cablevision Associates v. City of Tucson, 745 F.2d 1266 (9th Cir.1984) (Arizona statutes authorizing cities to license and restrict construction, operation, and maintenance of cable television systems); Springs Ambulance Service v. City of Rancho Mirage, 745 F.2d 1270 (9th Cir.1984) (California statute authorizing municipalities to provide free ambulance services to their residences); Tom Hudson & Associates v. City of Chula Vista, 746 F.2d 1370 (California statute authorizing cities to grant exclusive trash hauling contracts).
 
 
 6
 We agree with the district court that the state of California has enacted a comprehensive statutory scheme that vests limited discretion in municipalities to restrict competition in the provision of ground transportation at municipal airports. That scheme is found in Cal.Pub.Util.Code Secs. 21690.5-21690.10 (West Supp.1984), Cal.Gov't Code Secs. 50470 and 50474 (West 1983) and Cal.Penal Code Sec. 602.4 (West Supp.1984).[3] While the statutes do not compel the City to limit competition, the statutes express a state policy to limit competition in ground transportation if warranted to avoid the unnecessary duplication of services at municipal airports. The City acted pursuant to that policy in awarding a ten year exclusive contract to Airporter.[4]
 
 2. Contemplation of Exclusive Contracts
 
 7
 In addition to establishing that the City acted pursuant to a state policy to displace competition, the Airporter must demonstrate that the legislature contemplated the kind of acts alleged to be anticompetitive. Golden State Transit Corp. v. City of Los Angeles, 726 F.2d 1430, 1433 (1984). We will assume that the legislature contemplated the act if the challenged restraint was a "necessary or reasonable consequence of engaging in the authorized activity." Springs Ambulance Service v. City of Rancho Mirage, 745 F.2d 1270, 1273 (9th Cir.1984) (emphasis deleted) (quoting Gold Cross Ambulance & Transfer v. City of Kansas City, 705 F.2d 1005, 1013 (8th Cir.1983)).
 
 
 8
 The City's decision to grant an exclusive contract to Airporter is a reasonable and necessary consequence of the City's regulation of ground transportation at municipal airports. We are not forced to surmise what the legislature contemplated when it authorized municipalities to regulate ground transportation. The legislature expressly stated that it "contemplates that publicly owned or operated airports will grant exclusive or limited agreements." Cal.Pub.Util.Code Sec. 21690.8 (West Supp.1984).
 
 
 9
 Airporter is exempt from Sherman Act liability for the alleged anticompetitive contract because the state awarded it the exclusive contract pursuant to the state policy to displace competition with regulation of ground transportation at publicly owned or operated airports. That policy is clearly articulated and affirmatively expressed in Cal.Pub.Util.Code Secs. 21690.5 to 21690.10 (West Supp.1984), Cal.Gov't Code Sec. 50474 (West 1983) and Cal.Penal Code Sec. 602.4 (West Supp.1984). The Legislature clearly contemplated that the City might award an exclusive ground transportation contract pursuant to the state policy to prevent the unnecessary duplication of services. Cal.Pub.Util.Code Sec. 21690.8 (West Supp.1984).
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 While Parker v. Brown is commonly referred to as establishing a state action "immunity," its holding is that such state anticompetitive activity is simply not within the congressionally intended scope of the federal antitrust laws
 
 
 [2]
 State neutrality toward city regulations is not enough to entitle the city to state action immunity. Community Communications Co., Inc. v. Boulder, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982) (city regulation of cable television suppliers under home rule that gives cities self government in local and municipal affairs not exempted from antitrust liability)
 
 
 [3]
 The important statutory provisions are found in Secs. 21690.7 and 21690.8:
 The governing bodies of publicly owned or operated airports shall manage airport facilities and grant airport concessions in furtherance of the development of commerce and tourism in or affecting the state. In managing facilities and granting concessions for services to the public, such airport governing bodies shall promote the development of commerce and tourism by ... (b) avoiding wasteful duplication of such services; ... (d) limiting or prohibiting business competition which is destructive of the ends of promoting commerce and tourism in the state; (e) allocating limited airport resources to promote such ends; ....
 Cal.Pub.Util.Code Sec. 21690.7
 The Legislature recognizes that to further the policies and fulfill the objectives stated in this article, it is often necessary that publicly owned or operated airports enter into exclusive or limited agreements with a single operator or a limited number of operators. The governing bodies of publicly owned or operated airports shall grant exclusive or limited agreements to displace business competition with regulation or monopoly service whenever the governing body determines, in consideration of the factors set forth in Section 21690.9, that such agreements are necessary to further the policies and to fulfill the objectives stated in this article. The Legislature contemplates that publicly owned or operated airports will grant exclusive or limited agreements in furtherance of the policy of this state to displace business competition by exclusive or limited agreements to fulfill thes policies and objectives. (emphasis added)
 Cal.Pub.Util.Code Sec. 21690.8
 
 
 [4]
 We also reject Lorrie's contention that the City must show active state supervision of the City's regulation of ground transportation to qualify for the state action immunity. (Active state supervision is the second prong of the Midcal test. California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980)). Cities, unlike private persons, do not have to show active state supervision. Golden State Transit, 726 F.2d at 1434